UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEAJAY LESTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-1410-JMS-DML |
| | ) |
| ADAMS, *Captain,* | ) |
| MARK SEVIER, *Supt.* | ) |
| | ) |
| Defendants. | ) |

**Order Granting Motion for Summary Judgment
And Directing Entry of Final Judgment**

Plaintiff Deajay Lester alleges that defendants Captain Adams and Warden Sevier violated his constitutional rights under the Eighth Amendment when they were deliberately indifferent to the lighting defect in Mr. Lester's cell and its need for repair. Dkt. 1. Defendants Adams and Sevier filed a joint motion for summary judgment, dkt. 36, and Mr. Lester filed his response in opposition, dkts. 48-52. Defendants Adams and Sevier filed a reply, dkt. 53, and Mr. Lester filed a surreply and several other submissions, dkts. 54, 56, 57. For the following reasons, the motion for summary judgment, dkt. [36], is **granted**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of

a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trs. of Ind. Univ.,* 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as

to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II. Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, the undisputed facts and the disputed evidence are presented in the light most favorable to Mr. Lester as the nonmoving party. *See Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).

### A. Parties

At all times relevant to the complaint, Mr. Lester was a convicted and sentenced prisoner being housed at the New Castle Correctional Facility ("NCCF") in New Castle, Indiana. Dkt. 1 at 1. Defendant Adams was a captain in the M-Unit (Mr. Lester's unit) and Defendant Sevier was the Warden/Facility Administrator of NCCF. Dkt. 38-3 at ¶ 3; Dkt. 1 at 2; Dkt. 38-1 at ¶ 13.

### B. Cell Lighting at NCCF

On December 2, 2019,[1] Mr. Lester was in his cell (203) and went to retrieve the lunch trays from the floor near the cell door for his cellmate and himself. Dkt. 1 at 8. Lunch is typically served between 9:30 a.m. and 10:30 a.m. Dkt. 38-3 at ¶ 11. Mr. Lester bent down to get the trays and as he stood up, he struck his head on a metal shelf in the cell. *Id.* He sustained a serious head injury

---

[1] Throughout his complaint and exhibits, Mr. Lester alternates between stating that the incident occurred on December 2, 2019 and December 3, 2019. Based on the totality of the documents from Mr. Lester and defendants, it appears that the incident occurred on December 2, 2019.

3

requiring medical attention at that time and in the following weeks. *Id.* Mr. Lester alleges that his head injury occurred due to the non-functioning safety light in his cell. *Id.*

Mr. Lester states that he had previously contacted Fire and Safety on December 1 about the light in cell 203, and he would stop pod officers to inform them about the light. Dkt. 1 at 7. Mr. Lester was moved to cell 210 on December 4, 2019. Dkt. 38-1 at ¶ 15. On December 5, 2019, Mr. Lester submitted a letter to defendants Adams and Sevier about the light and accident. Dkt. 1 at 9-10. He further informed defendants that he had been attempting to get the light fixed in cell 203 since November 23, 2019 but had not received any responses other than being told by officers that a work order had been submitted. *Id.* at 10; dkt. 1-1 at 6. The light was ultimately repaired in cell 203 on December 10, 2019. Dkt. 1 at 10.

Mr. Lester states that his December 5, 2019 letter informed Warden Sevier that the move to a new cell on December 4 after the accident did not alleviate the issue because Mr. Lester's new cell (210) also had a broken safety light. *Id.* at 10; dkt. 1-1 at 24. Mr. Lester further alleges that on December 11, 2019, he submitted a grievance to an unidentified individual about the light in his new cell. *Id.* at 11. On December 19, 2019, the light was fixed in cell 210. Dkt. 1-1 at 24.

### III. Discussion

In his complaint, Mr. Lester alleges that defendants Adams and Sevier failed to address the broken safety light in his cell, which led to his striking his head on a metal shelf and causing injury. These allegations implicate Mr. Lester's Eighth Amendment rights.

In their motion for summary judgment, defendants argue that Mr. Lester had been housed in the same cell for more than a week prior to the incident and therefore should have been familiar with its layout; that the incident occurred during daylight hours and there would have been enough light in the cell even without the broken safety light; that the incident was observed and reported

in detail by Mr. Lester's cellmate, thus proving that the lighting in the cell was sufficient at the time of the incident; and that defendants were not aware of the broken safety light until *after* the incident and said light was repaired shortly thereafter. Dkt. 37.

In opposition, Mr. Lester argues that the pictures and evidence put forth by defendants to show that there was sufficient light in the cell even without the safety light are not reflective of the actual lighting on that day because the pictures were taken at a different time of day, in a different time of year, with the cell door open and with a working safety light. Dkt. 49 at 5-6. Mr. Lester further argues that the fact that his roommate was able to witness the incident in detail does not show that the lighting was sufficient. *Id.* at 6. Mr. Lester's roommate was mere inches from him when Mr. Lester struck his head and that is why he was able to see what happened so clearly. *Id.* Finally, Mr. Lester argues that while he cannot provide specific dates that he contacted Captain Adams or Warden Sevier about the broken safety light in his cell prior to his injury, he "steadfastly declare[s] that [he] made every possible attempt to seek their assistance both prior to and after [he] was injured." Dkt. 52-1 at 29.

### A. Eighth Amendment

The Eighth Amendment's proscription against the imposition of cruel and unusual punishment provides the constitutional standard for the treatment of convicted offenders such as the plaintiff. *Helling v. McKinney*, 509 U.S. 25, 31–32 (1993). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825 (1994). A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of

life's necessities." *Id.* The second requirement is a subjective one: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"[I]ndividual liability under § 1983 ... requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. . . . A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")).

**B. Analysis**

Even if the failure to repair the safety light in Mr. Lester's cell for a period of 10 days prior to his accident constitutes a deprivation so serious that he was deprived of the "minimal civilized measure of life's necessities," there is no evidence that either defendant was deliberately indifferent to that deprivation.

The record before the Court does not show that Captain Adams and Warden Sevier were aware of the broken safety light and deliberately indifferent to the need to fix the light. Captain Adams has submitted an affidavit stating that he was unaware of the broken light until after Mr. Lester's injury, and the grievance specialist (Hannah Winningham) and physical plant director (Tim Little) submitted affidavits stating that Warden Sevier has no personal involvement in the administration or repair of the safety lights. Dkt. 38-3 at ¶¶ 4, 5; dkt. 38-1 at ¶ 13; dkt. 38-2. While

Mr. Lester has submitted evidence to show that he submitted letters to both defendants *after* his accident, there is nothing in the record to show that Captain Adams and Warden Sevier were aware of the need to fix his safety light *before* his injury. Mr. Lester's affidavit does not create a genuine issue of material fact because he does not state that he submitted anything to these individuals or otherwise has reason to believe that they were aware of the broken light before his injury. Instead, he states only that he "made every possible attempt to seek their assistance." Dkt. 52-1 at 29. He provides no specifics about the "attempts" he undertook or any other information to suggest that his attempts were successful. In short, there is no evidence in the record upon which a reasonable jury could conclude that defendants knew of the broken light prior to Mr. Lester's injury but failed to take action.

The Court interprets Mr. Lester's claim to relate only to defendants' failure to repair the light in his original cell (203) and the injury allegedly cause by said failure. However, to the extent Mr. Lester argues that the failure to immediately repair the broken safety light in his new cell (210) also violates his constitutional rights, that claim fails as well. Once again, assuming a serious deprivation occurred, the record shows no evidence of deliberate indifference. Mr. Lester's reliance on a letter he sent to Warden Sevier on December 5, 2019 to purportedly show that Warden Sevier was aware that the new cell that Mr. Lester was transferred to after his accident (210) also had a broken safety light, does not create an issue of fact. Mr. Lester argues that the letter, dkts. 1-1 at 6; dkt 54-1 at 2, shows that Warden Sevier was aware of the broken light in cell 210 but did nothing to remedy the situation, dkt. 54 at 4. The December 5 letter reads in relevant part: "I am in the PCU, MI-210 now. Recently moved from MI-203 where my injury occurred. During my first weekend here I kept asking for a night light in my cell." Dkt. 54-1 at 2. This is the only reference to a broken safety light contained in the letter. While this statement might initially appear to show

7

that Warden Sevier was put on notice as of December 5, 2019 that Mr. Lester was again being held in a cell without adequate lighting, the reference to the "night light" must have been related to the light in his initial cell (203) because when Mr. Lester sent this letter to the Warden on Thursday, December 5, 2019, he had only been in cell 210 since the day before, Wednesday, December 4. There had not yet been any weekends when he could have been asking for a night light in his new cell. As this was the only reference to a broken light contained in the letter to Warden Sevier, it could not serve to put Warden Sevier on notice of any lighting issue in his new cell.

Accordingly, because there is nothing in the record to suggest that Captain Adams and Warden Sevier were aware of the risk that broken safety lights posed to Mr. Lester and disregarded that risk, defendants are entitled to summary judgment on Mr. Lester's Eighth Amendment claim.

### IV. Conclusion

For the foregoing reasons, defendants Adams and Sevier's motion for summary judgment, dkt. [36], is **granted**. Mr. Lester's "motion for court assistance," dkt. [56], and motion requesting status of case, dkt. [57], are **granted** and this order shall serve as the update he was seeking. Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 2/25/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

DEAJAY LESTER
189871
New Castle - CF
New Castle Correctional Facility - Inmate Mail/Parcels
1000 Van Nuys Road
New Castle, IN 47362


All Electronically Registered Counsel